[Civil No. 1935.   Filed December 10, 1921.]

[202 Pac. 407.]

STATE, on the Relation of BARNEY D. WELCH, Town Marshal and Chief of Police of the Town of Miami, Arizona, Appellant, v. ADA BURRIS, Appellee.

1. MUNICIPAL CORPORATIONS—MAY SUPPRESS DISORDERLY HOUSE.—The power to prohibit and suppress disorderly houses, mentioned by Civil Code of 1913, paragraph 1831, is, under recent legislation, still possessed by common councils in towns like Miami.

2. MUNICIPAL CORPORATIONS—TOWN HELD NOT AUTHORIZED TO PUNISH PROSTITUTES IN GENERAL.—A town, under Civil Code of 1913, paragraph 1831, subdivision 18, is only authorized to punish keepers and inmates of disorderly houses, and not prostitutes in general.

3. MUNICIPAL CORPORATIONS—STATUTE HELD TO RELATE ONLY TO CONFINEMENT, AND NOT PUNISHMENT.—Civil Code of 1913, paragraph 1831, subdivision 27, authorizing towns to establish workhouses and appoint necessary keepers to "provide for the confinement of vagrants, strollers, and persons leading an idle and dissolute life," and others, does not authorize the confinement of such persons in any other place.

4. MUNICIPAL CORPORATIONS—STATUTE HELD NOT TO AUTHORIZE GENERAL PUNISHMENT OF PROSTITUTE.—Assuming that Civil Code of 1913, paragraph 1831, subdivision 28, authorizes towns to punish persons pursuing the vocation of prostitutes as idle and disorderly persons leading an immoral or profligate life, when "found loitering or strolling about in public places or where liquor is sold," it does not authorize the general punishment of prostitutes.

5. MUNICIPAL CORPORATIONS—STATUTE RELATING TO ESTABLISHMENT OF POLICE HELD NOT TO AUTHORIZE ORDINANCE FOR PUNISHMENT OF PROSTITUTION.—Civil Code of 1913, paragraph 1831, subdivision 12, only authorizes the establishment and regulation of watchmen and policemen, and does not authorize punishment of prostitution in general.

6. MUNICIPAL CORPORATIONS — STATUTE RELATING TO PREVENTION OF DISEASE HELD NOT TO AUTHORIZE PUNISHMENT OF PROSTITUTION. Civil Code of 1913, paragraph 1831, subdivisions 24–26, having relation to the prevention of disease and the abatement and removal of certain nuisances, do not justify the passage of an ordinance punishing prostitution in general.

APPEAL from a judgment of the Superior. Court of the County of Gila.   G. W. Shute, Judge.   Affirmed.

Messrs. Jacobs & Partridge and Mr. George F. Senner, for the State.

Mr. Frank McCann, for Appellee.

FLANIGAN, J.—Appeal by the state of Arizona from an order discharging on *habeas corpus* the appellee, Ada Burris, from imprisonment under conviction had in the police· court of the town of Miami, pursuant to the terms of section 4 of Ordinance No. 10 of said town.   The question for determination is whether section 1831, Civil Code of 1913, in any of its provisions, grants the power to make and enforce the section of the ordinance in question.   The ordinance is entitled:

"Ordinance   No.   10,   Defining   Certain   Offenses Against Public Morals and Providing for the Punishment of the Same."

Section 4 reads as follows:

"That it shall be unlawful for any female person to pursue the vocation of a prostitute, or to advertise, in any manner, such vocation as prostitute."

Section 8 provides the punishment to be imposed for violation of the various provisions of the ordinance including section 4 thereof.

Section 1831 is a part of chapter 2 of title 7 of the Civil Code, and said chapter contains the main provisions of the charter of said town.   Such of the relevant subdivisions of section 1831, relied upon by counsel for appellant to warrant the enactment of these sections of the ordinance, as we deem it important to set forth, are as follows:

"1831. The common council of every such town shall have control of the finances, and all the property, real and personal, belonging to the corporation; and shall likewise have power within the limits of the town: . . .

"Twelfth. To establish and regulate the police of the town, to appoint watchmen and policemen, and to remove the same, and to prescribe their powers and duties. . . .

"Eighteenth. To license, tax and regulate billiard-tables and ball-alleys; to license, tax, regulate, suppress or prohibit gambling houses, bawdy-houses and other disorderly houses, and to punish the keepers and inmates thereof. . . .

"Twenty-seventh. To establish and maintain a workhouse or houses of correction, and to make regulations for the government thereof; to appoint the necessary officers and keepers thereof to provide for the confinement of vagrants, strollers, and persons leading an idle and dissolute life, and all persons who refuse to pay any fine, penalty, or costs of the collection thereof, for the breach of any ordinance of the town.

"Twenty-eighth. To authorize the arrest and punishment of vagrants, stragglers and idle and disorderly persons found loitering or strolling about in public places, or where liquor is sold, leading an immoral or profligate life, and to authorize the confinement of any such person in the workhouse or house of correction for a period not exceeding three months."

Subdivision eighteenth grants the power to regulate, suppress, or prohibit bawdy-houses and to punish the keepers and inmates thereof. Assuming—as we think is the case—that the power to prohibit and suppress the disorderly houses mentioned is under recent legislation still possessed by common councils in towns like Miami, the power to punish violators of ordinances enacted to suppress or prohibit such houses is, by the express words of the statute, limited to keepers and inmates thereof. The authority to

punish others is plainly withheld, not only because these others are not mentioned—*"expressio unius est exclusio alterius"*—but because it cannot be supposed that implied authority to punish others exists, when express authority was required to authorize the punishment of the very keepers and inmates of such establishments. *Ogden City* v. *McLaughlin,* 5 Utah, 387, 16 Pac. 721. Counsel say:

"Would not the ordinance in question, if thoroughly carried out, result in the 'suppression' of bawdy-houses, and does it not 'prohibit' them?"

Certainly, if there were no bawds, gamblers, or other disorderly persons, there could be no disorderly houses of the kinds mentioned. But the legislature has not by this law conferred upon the common council power over the general subject matter of prostitution and prostitutes, but has given only a limited power to enact ordinances directed against the houses, as such, and power to punish only keepers and inmates thereof. It is clear that the subdivision does not authorize punishment for a violation of section 4 of said ordinance.

Subdivision 27 authorizes the establishment of workhouses and houses of correction, and the appointment of necessary officers and keepers thereof "to provide for the confinement of vagrants, strollers and persons leading an idle and dissolute life," and others therein mentioned. It is evident that this subdivision has to do with the establishment and maintenance of workhouses or houses of correction, and while it may be assumed that the common council would have power by ordinance to specify the conditions under which the persons mentioned might be confined in such institutions, no power to confine any of such persons in any other place is conferred by such language. *State* v. *Ellis,* 26 N. J. L. 219.

As the ordinance in question does not attempt to authorize the confinement of any person, convicted for a violation of its terms, in a workhouse or house of correction, it is unnecessary to determine the questions suggested as to the authority to enact ordinances under the terms thereof, further than we have done.

We assume—without deciding — that subdivision twenty-eight authorizes the common council to enact ordinances for the arrest and punishment of persons pursuing the vocation of prostitutes, as idle and disorderly persons leading an immoral or profligate life, when *"found loitering or strolling about in public places or where liquor is sold,"* and to punish such persons otherwise than by confinement in a workhouse or house of correction. The power given "to authorize the confinement of any such person in the workhouse or house of correction" does not appear to be a limitation of the authority to arrest and punish the persons mentioned, expressly granted by such subdivision. There is evidently contemplated the infliction of punishment, or the use of reformatory or corrective measures, consistent with statutory and constitutional provisions generally. But section 4 of the ordinance does not include any provision in limitation of the class who may be punished, as set forth in the language, italicized, and it must therefore be held that the subdivision does not authorize the enactment or enforcement of such section.

It is further insisted that the power conferred by subdivision twelfth "to establish and regulate the police of the town" authorizes the ordinance in question. The subdivision of which this clause is a part authorizes the establishment and regulation of the police of the town in its personnel and duties, and does not grant the power to legislate, as is claimed, for the common good or welfare. If there were any doubt on this head, it would have to be resolved against such power under the maxim *"noscitur a*

*sociis,"* the accompanying provisions having to do with the employment and duties of the watchmen and policemen of the town. It is worthy of note that our state legislature, in chapter 147, Laws of 1921, must have assumed that section 1831, as it then existed, was not sufficiently broad in scope to authorize enactment for the general good or welfare, because it provided, by way of amendment and addition to such section, as follows:

"33. At any regular or adjourned meeting, to ordain, pass and adopt ordinances, acts, laws and regulations for the government of the corporation, its officers and all people within its corporate limits not inconsistent or in conflict with the Constitution and laws of the state, as shall be needful for the good government and order of the municipalities and to provide the manner of prosecution and define the punishment for the violation of any such ordinance, act, law or regulation."

Nor do we think that subdivisions 24, 25, and 26 of said section, having relation to the prevention of disease and the abatement and removal of certain nuisances on account of their nauseous, offensive, and unwholesome character, justify the section of the ordinance in question. It cannot be assumed that the legislature, if it intended to grant power by these subdivisions over such a subject matter as prostitution—by bad eminence "the social evil"—would have purposely left the question of whether such power existed to the hazard of conjecture. We should rather look for separate treatment of the matter, and such separate treatment is given it.

As the judgment of the police court of the town of Miami was unauthorized by law, it follows that the imprisonment of the appellee was unlawful, and the process by which she was detained void.

The judgment of the lower court must therefore be affirmed.

ROSS, C. J., and McALISTER, J., concur.